UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**EUGENE LEROY BOSS, JR.,**

    Plaintiff,               CIVIL ACTION NO. 10-14521

 v.                        DISTRICT JUDGE ARTHUR J. TARNOW

                             MAGISTRATE JUDGE MONA K. MAJZOUB

**COMMISSIONER OF
SOCIAL SECURITY,**

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**RECOMMENDATION**: Plaintiff's Motion for Summary Judgment should be **DENIED**, and that of Defendant **GRANTED**, as there was substantial evidence on the record that claimant retained the residual functional capacity for a limited range of medium work.

\* \* \*

Plaintiff filed an application for Social Security disability income benefits on September 11, 2006, alleging that he had become disabled and unable to work on October 31, 2005, at age 38, due to borderline intellectual functioning and a depressive disorder. Benefits were denied by the Social Security Administration. A requested _de novo_ hearing was held on March 4, 2009, before Administrative Law Judge (ALJ) B. Lloyd Blair. The ALJ found that the claimant retained the residual functional capacity to perform a limited range of medium work, including his past work as a grocery store bagger/packer. The Appeals Council declined to

review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Plaintiff was 41 years old at the time of the administrative hearing (TR 35). He had a twelve grade education, but had only taken special education courses during his time in school (TR 35, 39). Claimant had been employed by the Meijer's grocery store chain for eleven years as a bagger/packer and courtesy clerk (TR 36, 43-44). Plaintiff had also worked as a freezer assembler during the relevant past. He quit working as an assembler when supervisors and co-workers started to call him "stupid and dumb" (TR 44). As a bagger for Meijers, he was required to remain on his feet for extended periods. He had to constantly bend down and reach over his head. He was sometimes required to lift upwards of 50 pounds on a regular basis (TR 36-37). Claimant quit his job at Meijers in October 2005, when he could no longer tolerate the work demands placed upon him by his supervisors[1] (TR 43).

Claimant asserted that he was unable to find another job because he was unable to read (TR 38). He acknowledged being short tempered. Plaintiff allegedly became easily frustrated whenever he tried doing something for the first time (TR 38). He was unable to concentrate or focus on tasks for extended periods. Claimant

---

[1]Plaintiff testified that he quit his job because supervisors "were constantly on my butt" (TR 43-44).

2

stated that he did not work well with other people, particularly work supervisors (TR 52).  Plaintiff's mother testified that her son had grown increasingly irritable and became frustrated easily (TR 55).

A Vocational Expert classified Plaintiff's past work as a bagger/packer and freezer assembler as medium, unskilled activity (TR 58).  If the claimant were capable of medium work, the witness testified that he could return to his past work as a bagger/packer or freezer assembler. The witness explained that claimant's ability to return to his past jobs depended on whether he could work eight hours a day, 40 hours a week on a sustained basis (TR 59-60).

**LAW JUDGE'S DETERMINATION**

The Administrative Law Judge found that Plaintiff was impaired as result of a depressive disorder, borderline intellectual functioning and obesity, but that he did not have an impairment or combination of impairments severe enough to meet or equal the Listing of Impairments. The ALJ recognized that claimant's low intelligence and impaired concentration restricted him to simple, unskilled work that did not involve any reading, problem solving, calculating or reasoning. The ALJ further excluded claimant from jobs that required a lot of contact with supervisors and co-workers. As long as claimant was placed in a work situation that did not entail work setting changes, achieving production quotas, or having to depend on co-workers to accomplish his job, the ALJ found that he retained the residual functional capacity for medium work activity. Finding that claimant's past work as a bagger/packer and freezer assembler met this vocational profile, the ALJ found he was not disabled.

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion.  See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).  This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  Kirk, 667 F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if even substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff does not challenge the Law Judge's residual functional capacity evaluation that he remained physically capable of performing the exertional demands of medium work. Instead, he argues that his borderline intelligence, diminished memory, poor concentration and mental depression prevented him from performing gainful activity on a sustained basis.  Plaintiff further maintains that the Law Judge failed to give any weight to the disability opinion offered by his treating nurse practitioner.  Defendant countered that her disability opinion was properly discounted by the ALJ since nurse practitioners are not acceptable medical sources.

5

**DISCUSSION AND ANALYSIS**

Substantial evidence existed on the record supporting the Commissioner's conclusion that Plaintiff retained the residual functional capacity for a restricted range of medium work, including his past work as a bagger/packer.  It is undisputed that Plaintiff suffers from two non-exertional impairments. He was unable to read due to borderline intellectual functioning, and he suffers from periodic depression (TR 288).  Claimant's borderline intellectual functioning is of long-standing duration. There was nothing in the record to suggest that claimant's IQ has changed, and he has never been able to read.  Yet, he was gainfully employed by Meijers for over 11 years.  Claimant did not lose his job at the grocery store due to low intelligence.  He voluntarily quit working when he could not tolerate his supervisors.

Since the alleged onset date of disability in October 2005, the claimant's mental status was repeatedly described as clinically stable and unchanging.  He reportedly was well oriented, had a normal stream of mental activity, and his thought processes were logical and concrete.  There was no evidence of delusional thinking.  Claimant's judgment was described as fair, and he had partial insight into mental limitations (TR 289-290, 294, 296, 299-300, 304-305, 309-310, 335).

The progress notes submitted by the primary care giver, nurse practitioner Stephanie Sethi, indicated that claimant's depressive disorder responded well to medications, and that his overall mental status improved over time (TR 301, 306).  In a progress note dated April 7, 2007, nurse Sethi reported that

Plaintiff was doing well enough to seek employment with Goodwill Industries (TR 298). Even though claimant did not secure employment at that time, he continued to look for a job and was hoping to get an interview with a home improvement store (TR 303). From July 2007 through January 2009, Nurse Sethi consistently assigned Plaintiff a Global Assessment of Functioning (GAF) score of 60, which indicates only moderate symptoms or difficulties in social, occupational or school functioning. (TR 308, 313, 318, 323, 328, 333, 338). As recently as January 22, 2009, Plaintiff told nurse Sethi that he was "doing well", and he denied having any depressive symptoms (TR 332).

While the claimant relies heavily on the fact that nurse Sethi opined on February 27, 2009, that he was unable to sustain regular employment (TR 447), the ALJ properly declined to give the opinion controlling weight. It was not supported by the progress notes authored by nurse Sethi, or by objective clinical evidence submitted by other Community Mental Health examiners of record. Contrary to Plaintiff's assertion, the ALJ provided good reasons for why he declined to accept nurse Sethi's pessimistic opinion (TR 26).

Given the lack of objective clinical evidence of disability during the relevant period, the Law Judge could reasonably find that Plaintiff's impairments did not prevent him from returning to his past medium work as a bagger/packer or freezer assembler. There was medical evidence on both sides and, having examined it, the undersigned cannot say that the Commissioner's conclusion was not supportable. In light of that

7

evidence, the Commissioner could reasonably conclude that Plaintiff's subjective complaints of persistent, severe, totally disabling mental health symptoms were not fully credible.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted, and the instant Complaint dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a

8

response. The response shall address specifically, and in the same order raised, each issue contained within the objections.

```
                              s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE
```

**DATED: August 22, 2011**

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

```
Dated: August 22, 2011        s/ Lisa C. Bartlett
                              Case Manager
```

9